**Lloyd DUNKELBERGER, Appellant,**

v.

**DEPARTMENT OF JUSTICE, et al.**

**No. 88–5356.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 12, 1990.

Decided June 29, 1990.

Deborah R. Linfield, New York City, with whom Wallace A. Christensen, Washington, D.C., was on the brief, for appellant.

Nathan Dodell, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and R. Craig Lawrence and John D. Bates, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before SILBERMAN, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Lloyd Dunkelberger, a reporter for the New York Times Regional Newspaper Group, appeals the district court's grant of summary judgment denying his request for information from the Federal Bureau of Investigation pursuant to the Freedom of Information Act. Dunkelberger had sought information relating to the alleged suspension of an FBI agent for misconduct that supposedly occurred in connection with an investigation of a prominent state official and his nephew. Because an *in camera* inspection of certain submitted personnel materials revealed no informa-

tion warranting disclosure, we affirm the district court's decision.

## I. BACKGROUND

The facts of this case spring from a Federal Bureau of Investigation probe of former Florida State Senate President Mallory Horne and his nephew, Melvin Horne, focusing on their alleged laundering of money on behalf of drug smugglers. The FBI investigation resulted in a highly publicized trial in which Mallory Horne was acquitted and his nephew convicted.

Both before and after the trial, Senator Horne maintained that the FBI had acted improperly in its investigation, specifically in its use of undercover agents, including Special Agent Matthew Pellegrino. The FBI denied an informal request from Dunkelberger for information concerning any administrative disciplinary action that might have been taken against Pellegrino relating to his participation in the Horne investigation. Thereupon, in October 1987, Dunkelberger made a formal request to the FBI under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1982), for access to FBI records relating to any such disciplinary action. In the request, Dunkelberger specifically asked for copies of the letter of reprimand or suspension that he alleged Pellegrino had received.

FOIA provides that an agency, upon request, must make its records "promptly available to any person" requesting them, provided the request "reasonably describes" the records sought. 5 U.S.C. § 552(a)(3). FOIA exempts nine specific categories of information from its disclosure requirements. Two such exemptions are relevant here. One protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) ("Exemption 6"). The other exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)").

In denying Dunkelberger's request, the FBI stated that it could neither confirm nor deny the existence of the records sought by Dunkelberger, and stated that if any such records did exist, their disclosure could constitute an unwarranted invasion of personal privacy and thus would be protected under Exemptions 6 and 7(C). Dunkelberger took an administrative appeal of this decision to the Assistant Attorney General in charge of the Office of Legal Policy, who affirmed the initial decision denying disclosure under both exemptions.

Dunkelberger then brought suit against the Department of Justice to compel disclosure pursuant to 5 U.S.C. § 552(a)(4)(B). The district court granted summary judgment in favor of the Department. *Dunkelberger v. Department of Justice*, Civ. No. 88–1432, mem. op., 1988 WL 104959 (D.D.C. Sept. 30, 1988) ("Memorandum Opinion"). The court conducted an *in camera* investigation of certain personnel materials submitted by the FBI and found that they were "compiled for law enforcement purposes" and thus satisfied the threshold requirement for application of Exemption 7. *Id.* at 2. This aspect of the ruling is not contested by the parties. The court then determined, on the basis of its *in camera* inspection, that Pellegrino's privacy interest "significantly outweigh[ed]" any public interest in disclosure, and observed that the public interest in the proper review of the FBI's activities "can be adequately addressed by the agency's congressional oversight committees." Memorandum Opinion at 3. Having found the information at issue "clearly within the purview" of Exemption 7(C), *id.,* the court entered summary judgment in favor of the Department without reaching its alternative claim that the material was protected from disclosure by Exemption 6.

On appeal, Dunkelberger asserts that the district court erred (a) in refusing to order the release of the requested documents and (b) in relying on congressional oversight committees to protect the public interest in the adequate policing of agency activities. As the court's reference to the role of congressional oversight committees was not critical to its decision, we will address only the first claim of error.

## II. Discussion

Dunkelberger does not suggest that the FBI withheld any document from the district court that was relevant to his request. Therefore, the issue before us is whether the court was correct in ruling that the documents examined *in camera* were not subject to disclosure under Exemption 7(C). We do not address the applicability of Exemption 6 because the district court did not rule on that issue.

Exemption 7(C) excludes from mandatory disclosure

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy....

5 U.S.C. § 552(b)(7)(C). As the statutory language makes clear, whether disclosure of requested law enforcement records is required turns on whether any such disclosure could reasonably be expected to result in an "unwarranted" invasion of privacy. The Supreme Court's recent decision in *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), confirms that the specific reference to "unwarranted" in Exemption 7(C) "indicate[s] that a court must balance the public interest in disclosure against the interest Congress intended the Exemption to protect." *Id.* 109 S.Ct. at 1483.

 Under the balancing test adopted by this circuit in *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C.Cir.1984), a court must first identify the privacy interests at stake. *Stern* recognizes that a government employee has at least a minimal privacy interest in his own employment record and evaluation history, which includes a

> general interest in the nondisclosure of diverse bits and pieces of information, both positive and negative, that the government, acting as an employer, has obtained and kept in the employee's personnel file.

737 F.2d at 91. Exemption 7(C) takes particular note of the "strong interest" of individuals, whether they be suspects, witnesses, or investigators, "in not being associated unwarrantedly with alleged criminal activity." *Id.* at 91–92.

Second, the court must identify the public interest in disclosure. In *Stern* we dealt with a request for the identity of several FBI employees allegedly investigated in connection with the possible cover-up of illegal FBI surveillance activities. We noted that

> the public interest in the disclosure of the identities of the censured employees is only in knowing *who* the public servants are that were involved in the governmental wrongdoing, in order to hold the governors accountable to the governed.

737 F.2d at 92 (emphasis in original). We went on to distinguish this interest in knowing the identity of the disciplined employees "from other public interests that may arise in requests for disclosure of government investigatory records," such as knowing "that a government investigation itself is comprehensive," that a released report is accurate, or that "any disciplinary measures imposed are adequate." *Id.* We discarded those other public interests as elements to be balanced against the employees' privacy interests "because they would not be satiated in any way by the release of the names of the censured employees." *Id.*

Thus, in conformity with *Reporters Committee*, we identified the public interest by taking into account "the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'" 109 S.Ct. at 1481 (citation omitted). That interest, of course, must be defined with sufficient specificity to enable a court to determine the nature of the public interest that it is required to balance against the privacy interests Exemption 7(C) was intended to protect.

In applying these principles to the case before us, we begin by identifying the privacy interests that are here at stake. As we noted in our discussion of the interests protected by Exemption 7(C), while Pellegrino has a particular interest in not being

associated unwarrantedly with the misconduct alleged by Dunkelberger, he also has a more general interest in protecting the privacy of his employment records against public disclosure, whether the information contained in them is favorable or unfavorable. Thus he has at least a minimal interest in not having it known whether those records contain or do not contain a letter of reprimand.

In identifying the public interest that is to be taken into the balance, we look to the nature of the requested document and to the FOIA purpose to be served by its disclosure. In his "Statement of Material Facts," Dunkelberger describes the latter as the public's right to be informed "about intentional over-stepping by an FBI agent in his dealings with a political figure and the drug scene." The document he requests is an alleged letter of reprimand or suspension "relating to the departmental investigation of, and disciplinary punishment meted out to, Special Agent Matthew Pellegrino for his volitional, unauthorized activities during the course of an FBI undercover 'sting' operation." Brief for Appellant at 1.

■ We conclude that the interest to be weighed here is the public's understandable concern over information about an FBI agent's alleged participation in a scheme to entrap a public official and in the manner in which the agent was disciplined. This was the specific focus of Dunkelberger's FOIA request; and, in fact, his counsel acknowledged at oral argument that if the documents at issue did not relate to Pellegrino's alleged overreaching in the Horne investigation, they would not be subject to disclosure, even if they were to reveal other kinds of misconduct.

Having examined those documents *in camera,* we agree with the district judge's conclusion that there is nothing in them that would "support plaintiff's argument for concluding that disclosure would be in the public interest." *See* Memorandum

Opinion at 2–3. As there is nothing to be placed in the balance against Pellegrino's general interest in preserving the confidentiality of his personnel files, we conclude that no invasion of Pellegrino's privacy is warranted, however slight. We therefore hold that Exemption 7(C) was properly invoked and the FBI's refusal to confirm or deny the existence of letters of reprimand or suspension fully justified.

Nothing we have said should be taken to imply that once an *in camera* inspection finds information relevant to the public interest described, disclosure is automatic. As *Stern* and *Reporters Committee* make clear, Exemption 7(C) will always call for a balancing of the competing interests, although we may do so on a categorical basis if a "case fits into a genus in which the balance characteristically tips in one direction." *Reporters Committee,* 109 S.Ct. at 1483. Nor do we foreclose properly framed requests for information relating to the standards of conduct required of FBI agents and the disciplinary action taken when they are breached. *See, e.g., Department of the Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

### III. CONCLUSION

Because a confirmation or denial of the existence of the letter of reprimand sought by Dunkelberger would have constituted an unwarranted invasion of Special Agent Pellegrino's privacy, we find that Exemption 7(C) was properly invoked. The judgment of the district court is therefore

*Affirmed.*