Mark W. **DOBRONSKI,**
Plaintiff–Appellee,

v.

**FEDERAL COMMUNICATIONS COMMISSION, an agency of the Executive Branch of the United States of America, Defendant–Appellant.**

No. 92–16509.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 1994.

Decided Feb. 17, 1994.

---

John S. Koppel, United States Department of Justice, Washington, D.C., for the defendant-appellant.

Harry P. Friedlander, Phoenix, Arizona, for the plaintiff-appellee.

Before: GOODWIN, WIGGINS, and BRUNETTI, Circuit Judges.

GOODWIN, Circuit Judge:

The Federal Communications Commission ("FCC") appeals a judgment compelling it to disclose an FCC employee's sick leave records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988). The FCC argues that the records are protected from disclosure under the FOIA's personal privacy exemption. The district court found that the records did not contain protected personal medical information. We affirm.

Mark W. Dobronski is president of the American Private Radio Association ("APRA"), which publishes the *APRA News,* a monthly newsletter covering the FCC and its personnel. He brought this FOIA action seeking work attendance and sick leave records for an assistant bureau chief of the FCC's Private Radio Bureau in Washington, D.C. He maintains that he needs the records to substantiate a "tip" he received that the assistant had been taking unaccrued sick leave and improperly using sick leave time to take paid vacations.

The FCC moved for summary judgment, claiming that the requested records are protected under Exemption 6 of the FOIA, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The district court conducted an *in camera* review of the requested documents and found Exemption 6 inapplicable. The judge wrote:

> The documents at hand are not the type that Exemption 6 is intended to protect. The documents consist mainly of leave slips and, with the exception of the assistant's social security number, contain no personal information. The leave slips do not describe the reasons why leave was being taken. Thus, the privacy interests in these leave slips is minimal at best.

*Dobronski v. FCC,* Civ. 91–1295, at 3 (D.Ariz.) (June 16, 1992).

The court further found that there was a public interest in disclosure of the information in light of Dobronski's stated purpose of investigating allegations of corruption by FCC officials. The court concluded: "Even a slight public interest outweighs the private interests attached to the documents at issue. In balancing the respective interests, this Court concludes that the disclosure of these documents is not a 'clearly unwarranted invasion of privacy.'" *Id.* at 4. The court denied the government's motion for summary judgment and ordered disclosure of the records. We agree with the district court that the information requested is subject to disclosure under the FOIA.

The FOIA mandates a policy of broad disclosure of government documents when production is properly requested. 5 U.S.C. § 552(a)(3). An agency may deny disclosure of its records only if the information falls within one of the nine statutory exemptions to the disclosure requirement under 5 U.S.C. § 552(b). *Multnomah County Medical Soc'y v. Scott,* 825 F.2d 1410, 1413 (9th Cir.1987). The government has the burden of establishing that one of the exemptions applies. *Id.* Exemptions to the FOIA are to be narrowly construed. *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 151, 110 S.Ct. 471, 474–75, 107 L.Ed.2d 462 (1989); *Department of Air Force v. Rose,* 425 U.S. 352, 366, 96 S.Ct. 1592, 1601–02, 48 L.Ed.2d 11 (1976). This court will reverse the district court's findings that a particular document is exempt from mandatory disclosure only if the finding is clearly erroneous. *Van Bourg, Allen, Weinberg & Roger v. NLRB,* 751 F.2d 982, 984 (9th Cir.1985); *Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 742 (9th Cir.1979).

### A. Applicability of the Privacy Exemption

The threshold question is whether the requested documents are "personnel and medical files and similar files" within the meaning of 5 U.S.C. § 552(b)(6).

Dobronski contends broadly that the requested records do not fall under Exemption 6 and thus, disclosure is mandatory and not subject to a balancing of interests. He argues that work attendance and sick leave records do not qualify as "personnel files" as the Supreme Court defined the term in *Rose.* We disagree.

In *Rose,* the Court stated that "personnel files" ordinarily contain information such as "where [an individual] was born, the names of his parents, where he has lived from time to time, his high school or other school records, results of examinations, [and] evaluations of his work performance." *Id.,* 425 U.S. at 377, 96 S.Ct. at 1601.

While the work records at issue here contain little private personal information, sick leave records could contain information regarding the reasons for an employee's sick

leave, or the state of her health. Information regarding illness or health is personal, and falls under the scope of Exemption 6. *See Multnomah,* 825 F.2d at 1415 (recognizing a privacy interest in age and disability status). Had the requested records contained protected information, the *in camera* examination would have established grounds for denial of the request.

■ Further, sick leave records are "closely related to a medical file," thus qualifying as a "similar file" under Exemption 6. We decline to hold that sick leave records should be categorically excluded from the scope of Exemption 6.[1]

### B. Balancing of Interests Under Exemption 6

We therefore must decide whether disclosure of the requested records in this case would constitute a "clearly unwarranted invasion of personal privacy" within the meaning of 5 U.S.C. § 552(b)(6).

■ To determine whether an invasion of privacy is clearly unwarranted, the court balances four factors: (1) the plaintiff's interest in disclosure; (2) the public interest in the disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any alternate means of obtaining the requested information. *Multnomah,* 825 F.2d at 1413 (citing *Minnis v. United States Dep't of Agriculture,* 737 F.2d 784, 786 (9th Cir. 1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985)).

■ As for the plaintiff's interest in disclosure, Dobronski, or any other citizen, has a right to investigate whether government officials abuse their offices and the public fisc by improperly using sick leave to take unauthorized paid vacations. Although Dobronski may sell additional newsletters should this "news tip" pan out, his interest is not solely commercial in nature. He asserts a public interest in investigating payroll abuse by public officials. Thus, those cases in which we have held that disclosure was unwarranted where the FOIA requests were primarily commercial in nature are inapplicable here. *See, e.g., Minnis,* 737 F.2d at 786–87; *Multnomah,* 825 F.2d at 1414.

As for the public interest, Dobronski argues correctly that the public has a strong public interest in uncovering corruption in a government agency. Abusing sick leave can be a form of payroll padding that violates the public trust. One of the purposes of the FOIA was to let some daylight into the bureaucratic swamp. Congress intended the public to use the FOIA to "open agency action to the light of public scrutiny," *Rose,* 425 U.S. at 361, 96 S.Ct. at 1599, and "to ensure an informed citizenry ... needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 241, 98 S.Ct. 2311, 2326, 57 L.Ed.2d 159 (1978).

Dobronski's request would further FOIA policy objectives. If his allegations are true, and a staff member has been taking unaccrued sick leave time, or has abused sick leave to "moonlight" another job or take inappropriate vacations, then Dobronski will have uncovered a misuse of public monies. Disclosure of such abuse is in the public interest.

The FCC argues that because Dobronski did not produce "objective substantiation" for his allegations of misconduct, the public has only a minimal interest in disclosure of these records. The cases the FCC cites in support of this argument, however, all involved application of Exemption 7(C).[2] In that context, this court has held that when there is no credible evidence of wrongdoing on the part of a government employee, the public interest in disclosure of investigation records is minimized. *See Hunt v. FBI,* 972 F.2d 286, 289 (9th Cir.1992) (contents of file revealed a thorough FBI investigation containing credi-

---

1. The FCC does not contend that work attendance records alone fall within the scope of the privacy exemption. However, where, as here, the records list the sick leave time taken, they contend that such records should be considered under the exemption.

2. Exemption 7(C) protects "records or information compiled for law enforcement purposes" to the extent that such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (Supp.1993).

ble evidence that the alleged misconduct had not occurred); *Dunkelberger v. Department of Justice,* 906 F.2d 779, 782 (D.C.Cir.1990) (*in camera* review of documents revealed nothing supporting argument that disclosure would be in the public interest).

As we have noted, the inquiry under Exemption 7(C) differs from that under Exemption 6; the threat to privacy interests that may justify nondisclosure in an Exemption 7(C) case may warrant disclosure in an Exemption 6 case. *See Hunt,* 972 F.2d at 288. Furthermore, we decline to adopt a circular rule that an inquiry must be buttressed by possession of objective proof of the facts to be disclosed before the agency will be required to disclose the relevant records. Such a requirement would be antithetical to the FOIA's policy goals. Many investigations that uncover government corruption begin with undocumented "tips." Thus, we conclude that a significant public interest is served by disclosure of the information sought.[3]

Against the asserted public and private interests, which are significant, this court must balance the degree of invasion into a staff person's privacy interests. This inquiry evaluates the amount and kind of personal information that disclosure would reveal. *Multnomah,* 825 F.2d at 1415–16; *Minnis,* 737 F.2d 784.

After its *in camera* review of the questioned sick leave records, the district court found that the documents consist mainly of leave slips, and with the exception of the staff member's name and social security number, contain no personal information. The records do not state the reasons why the assistant took sick leave, merely the dates on which she took sick leave.

The FCC nonetheless argues that individuals have a significant interest in nondisclosure of information concerning the general state of their health, as well as a substantial interest in nondisclosure of information regarding whether they were sick on a given day. As authority, the FCC cites *Quinn v. Stone,* 978 F.2d 126 (3d Cir.1992), *reh'g en banc denied,* which involved a claim under the Privacy Act, 5 U.S.C. § 552a. *Quinn* held that employees have a privacy interest in their work attendance records. *Quinn,* 978 F.2d at 132–33. The court reasoned that "[t]ime card information regarding taking time off from work as compensation for overtime, as sick leave, or vacation can easily be considered descriptive of an individual" and fall within the protections of the Privacy Act. *Id.* at 133. While we agree that government employees may have some privacy interest in the dates and times they took sick leave, for Privacy Act purposes, this nominal privacy interest, in a FOIA case, does not overcome the public interest in disclosure of official misconduct.

Finally, the FCC contends that a public servant has a "particular interest in not being associated unwarrantedly with the misconduct alleged." *Dunkelberger,* 906 F.2d at 781–82; *Hunt,* 972 F.2d at 288 (holding that government employees have a legitimate interest in protecting private information that could conceivably subject them to annoyance or harassment). This privacy interest is heightened when the allegations involve "sexual and professional misconduct [which] could

---

**3.** The FCC also argues that the identity of the FOIA requester and the purpose for which the request is made should be irrelevant to our analysis. For authority, it cites *United States Dep't of Justice v. Reporters Committee,* 489 U.S. 749, 771, 109 S.Ct. 1468, 1480, 103 L.Ed.2d 774 (1988) (stating that "whether an invasion of privacy is *warranted* cannot turn on the purposes for which the [FOIA] request for information is made" and that "the identity of the requesting party has no bearing on the merits of his or her FOIA request") (emphasis in original).

In *Reporters Committee,* the Supreme Court held that rap sheets, which list an individual's prior criminal arrests, are categorically excluded from disclosure by Exemption 7(C), the FOIA's

law enforcement records exemption. *Id.* at 780, 109 S.Ct. at 1485. The Court said the newsgathering function was irrelevant to its analysis of whether release of the records would lead to an unwarranted invasion of privacy.

Likewise, our decision here does not turn on Dobronski's press connection or intent to use the information obtained in a news article in his trade journal. Instead, our focus is on "the citizens' right to be informed about 'what their government is up to.'" *Id.* 489 U.S. at 773, 109 S.Ct. at 1481. "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose." *Id.*

cause the agent great personal and professional embarrassment." *Id.*

However, both *Dunkelberger* and *Hunt* focused on the law enforcement records exemption, Exemption 7(C). This court has noted that "[t]he protection available under each exemption is not co-extensive." *Hunt,* 972 F.2d at 288. Exemption 6 applies when disclosure *"would constitute a clearly unwarranted invasion* of personal privacy" while Exemption 7(C) prohibits disclosure whenever it *"could reasonably be expected to constitute an unwarranted invasion* of personal privacy." 5 U.S.C. § 552(b)(6) & (b)(7)(C) (emphasis added).

 In this case, although the assistant in question may have some privacy interests in not being connected to the misconduct Dobronski alleges, we find that disclosure does not constitute a "clearly unwarranted invasion of personal privacy," given the public interest in knowing whether sick leave was being abused to allow for inappropriate paid vacations.[4]

Finally, we must consider whether there were alternative means of obtaining the information sought. The FCC contends that Dobronski's stated goal of uncovering abuse of sick leave would be better served by obtaining information about the "FCC's internal investigation process." It argues that Dobronski can "presumably find out much, through proper FOIA requests, about how often the FCC investigates alleged abuses of leave policy, how it conducts such investigations, and what actions it takes."

However, if there is a bureaucratic cover-up going on, that is all the more reason to deny the § 6 exemption. Dobronski claims he has a tip that a particular, relatively high-ranking FCC official—an assistant bureau chief of the FCC's Private Radio Bureau—is abusing her position by using sick leave time inappropriately. General records of the FCC's policies and procedures will not enable Dobronski to evaluate these allegations.

Thus, the "alternate means" factor weighs in favor of Dobronski.

We hold that, given the staff person's position in the FCC and the nature of the records sought, the public interest in uncovering alleged abuse of public monies and public office outweighs the "minimal" privacy interests involved.

**AFFIRMED.**

---

4. The FCC also argues that lower level officials, as they allege the subject employee to be, generally have a stronger interest in personal privacy than do senior officials. *See Hunt,* 972 F.2d at 289. We agree. However, an assistant bureau chief for the FCC's Private Radio Bureau holds a position of relative influence and is not a low-level government official deserving of a heightened level of privacy.