PAINTING INDUSTRY OF HAWAII MARKET RECOVERY FUND, Plaintiff–Appellee,

v.

UNITED STATES DEPARTMENT OF the AIR FORCE, Defendant–Appellant.

SEATTLE BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL–CIO; Rebound, Plaintiffs–Appellants,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant–Appellee.

SEATTLE BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL–CIO; Rebound, Plaintiffs–Appellees,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant–Appellant.

Nos. 90–16659, 91–35076 and 91–35193.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1992.

Submission Withdrawn March 15, 1993.

Resubmitted April 18, 1994.

Decided June 20, 1994.

1480

John F. Daly, U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

Pauline M. Sloan, San Francisco, CA, for plaintiff-appellee in No. 90–16659.

David Campbell, Schwerin, Burns, Campbell & French, Seattle, WA, for plaintiffs-appellants, appellees.

John F. Daly, U.S. Dept. of Justice, Washington, DC, for defendant-appellee, appellant, in Nos. 91–35076, 91–35193.

Before: WRIGHT, NORRIS, and HALL, Circuit Judges.

Opinion by Judge CYNTHIA HOLCOMB HALL; Concurrence by Judge WILLIAM A. NORRIS

CYNTHIA HOLCOMB HALL, Circuit Judge:

We have before us two cases in which labor organizations seek to procure records from government agencies under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. They seek to glean insight into the government's enforcement of prevailing wage standards for employees of government contractors. In each case, the district court ruled for the labor organization and ordered the government agency to produce the information. We reverse.

I

In No. 90–16659, the Painting Industry of Hawaii Market Recovery Fund ("Recovery Fund") sought disclosure from the Air Force of certain payroll information provided to the government by a private contractor working on a construction contract at Hickam Air Force Base. The contractor was required to pay workers the prevailing wage for their work under the Davis–Bacon Act, 40 U.S.C. § 276a, and Federal Acquisition Regulations, 48 C.F.R. §§ 22.400–22.407. Under the Copeland Anti–Kickback Act, 40 U.S.C. § 276c, the contractor was required to file "certified payroll records" with the contracting agency (here, the Air Force). These records contain detailed information about each employee working on a particular project: the worker's name and address, social security number, job classification, hourly rate of pay, number of hours worked during the reporting period, wages and fringe benefits paid, and deductions taken out of the worker's wages.

The Air Force denied Recovery Fund's FOIA request for the certified payroll records for the Hickam Air Force Base Project, asserting that the information fell within FOIA's exemption for "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4) ("Exemption 4"). Recovery Fund filed an administrative appeal, which was also denied. Recovery Fund then brought suit in district court to compel disclosure of the payroll records. The Air Force asserted a defense not only under Exemption 4, but also under Exemption 6[1] and Exemption 7(C) to FOIA.[2] On cross-motions for summary judgment, the district court held that genuine issues of material fact precluded summary judgment on the Air Force's Exemption 4 defense. 751 F.Supp. 1410, 1414–15. The district court granted partial summary judgment to Recovery Fund, holding that Exemption 6 did not justify nondisclosure of most of the information contained in the payroll records because "[t]he employees' modest privacy interest in preventing disclosure of such information when balanced against the significant public interests in monitoring compliance with the Davis–Bacon Act tips decidedly in favor of disclosure." *Id.* at 1417. The district court held that the employees' social security numbers were properly withheld under Exemption 6. *Id.* at 1418.

Finally, the district court granted partial summary judgment for Recovery Fund on the Air Force's Exemption 7(C) defense. The district court did not reach the question of whether the payroll records were "compiled for law enforcement purposes" because it held that the Air Force did not show that the "balance of private versus public interests under the analysis of Exemption 6 was so close" that the slightly lighter burden of proof imposed on the Air Force by Exemption 7(C) "would tilt that balance in favor of non-disclosure." *Id.* at 1418.[3]

---

1. FOIA Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

2. "This section does not apply to matters that are records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

3. "Exemption 7(C) is more protective of privacy than Exemption 6: the former provision applies to any disclosure that 'could reasonably be expected to constitute' an invasion of privacy that is 'unwarranted,' while the latter bars any disclosure that 'would constitute' an invasion of priva-

After the district court denied the Air Force's motion for reconsideration, 756 F.Supp. 452, the Air Force withdrew its defense based on Exemption 4 and stipulated to the entry of final judgment in the district court. The Air Force offered to provide the payroll records to Recovery Fund with the names, addresses, and other personal identifiers of the workers redacted. The Air Force appeals the district court's grant of summary judgment in favor of Recovery Fund as to Exemptions 6 and 7(C).

In No. 91–35076, Seattle Building and Construction Trades Council, AFL–CIO, and Rebound (collectively "Rebound") requested that the Department of Housing and Urban Development ("HUD") release copies of certified payroll records. These records were filed in connection with a housing rehabilitation project carried out by the City of Seattle with assistance from HUD. The records were submitted by the City's electrical contractor. The City released the records after redacting all information that would identify individual workers, such as their names, addresses, and social security numbers. HUD informed Rebound that the identifying information had been properly redacted pursuant to Exemptions 6 and 7(C). The redaction was affirmed on administrative appeal.

Rebound filed suit in district court to compel disclosure of the certified payroll records with only social security numbers redacted. Rebound also sought a variety of other remedies, including an injunction ordering future release of similar records, declaratory relief, attorneys' fees, and the appointment of a special prosecutor pursuant to 5 U.S.C. § 552(a)(4)(F). On cross-motions for summary judgment, the district court granted partial summary judgment for Rebound and rejected HUD's Exemption 6 and 7(C) defenses. The district court followed a similar line of analysis as the district court in *Recovery Fund.* The district court ordered HUD to produce the records sought by Rebound, with social security numbers redacted, and denied the other relief sought by Rebound. Both parties appeal.

## II

We ordinarily review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the correct substantive law. *Tzung v. State Farm Fire & Casualty Co.,* 873 F.2d 1338, 1339–41 (9th Cir.1989). In this circuit, however, we apply a two-step standard of review to FOIA cases. We determine whether the district court had an adequate factual basis on which to make its decision and, if so, review for clear error the district court's finding that the documents were exempt. *Lewis v. IRS,* 823 F.2d 375, 377–78 (9th Cir.1987); *but see Petroleum Information Corp. v. United States Dep't of Interior,* 976 F.2d 1429, 1433 (D.C.Cir. 1992) (R.B. Ginsburg, J.) (applying "in FOIA cases the same standard of appellate review applicable generally to summary judgments").

## III

We now turn to the merits. Exemption 6 requires that courts balance the public interests in disclosure against the privacy interests that would be harmed by disclosure. *United States Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989). We cannot limit our evaluation of the effects of disclosure to the requesting party's particular purpose in seeking disclosure. *Id.* at 771, 109 S.Ct. at 1480 ("[W]hether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made."). We must evaluate both the public benefit and the potential invasion of privacy by looking at the nature of the information requested and the uses to which it *could* be put if released to *any* member of the public. *See United States Dep't of Defense v. FLRA,* —— U.S. ——, ——, 114 S.Ct. 1006, 1015–16, 127 L.Ed.2d 325 (1994) ("when we consider that other parties, such as commercial advertisers and solicitors, must have the same access

cy that is 'clearly unwarranted.' " *United States Dep't of Defense v. FLRA,* —— U.S. ——, —— n. 6,

114 S.Ct. 1006, 1013 n. 6, 127 L.Ed.2d 325 (1994).

under FOIA as the unions to the employee address lists sought in this case, it is clear that the individual privacy interest that would be protected by nondisclosure is far from insignificant.") (citations omitted); *Reporters Committee,* 489 U.S. at 771, 109 S.Ct. at 1481 ("[T]he rights of the two press [requesters seeking to procure criminal rap sheets] are no different from those that might be asserted by any other third party, such as a neighbor or prospective employer."); *see also Department of the Air Force v. Rose,* 425 U.S. 352, 380–81, 96 S.Ct. 1592, 1608, 48 L.Ed.2d 11 (1976) (when evaluating a request filed by law review editors for disclosure of Air Force Academy discipline reports from which names were redacted, court considered possibility that former classmates might be able to identify subjects of the reports even though the requesters would not be able to do so); *National Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 878 (D.C.Cir.1989) (considering use to which mass marketers would put list of federal retirees in evaluating employee association's request for name and address list), *cert. denied,* 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990).

## A

■ We first consider the privacy interests implicated by the FOIA requests at issue. The requesters seek to procure not only a name and address list of workers, but a list that connects those names to precise information about each worker's occupational classification, wages, and wage deductions. It cannot be disputed that this information is normally considered private. In *Horner,* the District of Columbia Circuit held that a list revealing only the names and addresses of federal retirees constituted a "significant" invasion of privacy because the retirees would be attractive targets for mass marketers. *Horner,* 879 F.2d at 878; *see also United States Dep't of Defense,* —— U.S. at ——, 114 S.Ct. at 1015 (interest in nondisclosure of home addresses is "not insubstantial"); *FLRA v. United States Dep't of Veterans Affairs,* 958 F.2d 503, 510–11 (2d Cir.1992).

In the cases before us, the requesters seek a list of people engaged in the construction

trade, broken into their particular occupational classification. Undoubtedly, such a list would be of interest to people interested in marketing goods and services to people working in the construction trades. As in *Horner,* there is a "substantial probability that the disclosure will lead to" the use of the list by marketers and a concomitant invasion of the workers' right to be let alone. *See Horner,* 879 F.2d at 878; *see also United States Dep't of Defense,* —— U.S. at —— ——, 114 S.Ct. at 1015–16 (privacy interest far from insignificant when considering commercial advertisers must have the same access under FOIA). In *Minnis,* we recognized the invasion of privacy that can result from release of a list of names and addresses coupled with a characteristic susceptible to commercial exploitation: "Disclosure [of a list of persons seeking a permit to use a particular river for recreational purposes] would reveal not only the applicants' names and addresses, but also their personal interests in water sports and the out-of-doors. Other commercial advertisers could obtain the list, subjecting the applicants to an unwanted barrage of mailings and personal solicitations." *Minnis v. U.S. Dept. of Agriculture,* 737 F.2d 784, 787 (9th Cir.1984) (citation omitted).

The requesters here not only seek names and addresses, but also particularized information about wages. We agree with those circuits that have considered the issue that significant privacy interests are implicated by the release of this information. *See Painting & Drywall Work Preservation Fund v. HUD,* 936 F.2d 1300, 1303 (D.C.Cir. 1991) ("[D]isclosure of the requested data would constitute a substantial invasion of privacy."); *Hopkins v. HUD,* 929 F.2d 81, 87 (2d Cir.1991) ("[W]e have no doubt that individual private employees have a significant privacy interest in avoiding disclosure of their names and addresses, particularly where, as here, the names and addresses would be coupled with personal financial information.") (citations omitted).

■ The requesters argue that the workers' reasonable expectations that wage information will be kept confidential is weakened in this particular context because other fed-

eral and state laws compel disclosure of major aspects of the requested information. However, "[t]he privacy interest protected by Exemption 6 'encompass[es] the individual's *control* of information concerning his or her person.' An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *United States Dep't of Defense,* —— U.S. at ——, 114 S.Ct. at 1015 (citation omitted) (emphasis added).[4]

Moreover, the requesters' argument ignores the facts. The Davis–Bacon Act requires wage scales on federally-funded construction projects to be posted in a "prominent and easily accessible place at the site of work." 40 U.S.C. § 276a(a). The requesters, however, are not seeking disclosure of wage scales, but actual payroll information for individual workers. Since neither the hours worked by a particular individual, that individual's job classification, nor even the fact that an individual is working on a project is rendered public information by the Davis–Bacon Act, the requesters overestimate the intrusion into the workers' financial privacy worked by the posting requirement.

Recovery Fund also argues that the workers on the Hickam Air Force Base project have a diminished expectation of privacy because Hawaii's freedom of information statute makes certified payroll records for public works projects available for public inspection. Hawaii Rev.Stat. § 92F–12(a)(9). Because construction workers usually work on a number of projects during any one year, Recovery Fund argues, some of their income infor-

mation is already publicly available if they have worked on any state public works projects. Thus, the additional invasion of privacy that results from disclosing payroll information on federal construction contracts is minimal. The answer to this is quite simple: the payroll records that the labor organizations here seek remain private because they contain information entirely distinct from Hawaii state contract payroll records.

In sum, we conclude that workers on federally-funded construction projects have a substantial privacy interest in information tying their names and addresses to precise payroll figures.

### B

Having concluded that substantial privacy interests would be implicated by fulfillment of the FOIA requests at issue, we now consider whether FOIA recognizes a public interest in disclosure that might outweigh the intrusion that such disclosure would bring about. FOIA only recognizes the public's interest in knowing "what their government is up to" and does not create an avenue to acquire information about other private parties held in the government's files. *Reporters Committee,* 489 U.S. at 772–73, 109 S.Ct. at 1481–82.[5] The requesters here both acknowledge that, in light of *Reporters Committee,* they cannot request disclosure of the records on the basis that they would be useful in searching for violations of the Davis–Bacon Act by federal contractors. They accordingly frame the public benefit to be served by disclosure as an inquiry into the government's diligence in enforcing Davis–

---

4. Requesters describe the Court's decision in *United States Dep't of Defense,* as predicated on the workers' decisions *not* to disclose their home addresses to their collective bargaining representative. —— U.S. at ——, 114 S.Ct. at 1015. The Court uses the workers' decision to demonstrate their "nontrivial privacy interest in nondisclosure" even if the information was available to the public in some other form. *Id.* Under the facts of this case, we do not need such evidence to bolster our conclusion that workers have a significant privacy interest in the requested information regarding their wages.

5. *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., Local 598 v. Dep't of the Army, Corps of Engineers,* 841 F.2d

1459 (9th Cir.1988), a case reviewing the district court's failure to award attorneys' fees to a labor organization after the district court awarded disclosure of certified payroll records, has been overruled by a pair of Supreme Court cases. *Local 598*'s analysis was predicated on the assumption that "the public interest in the enforcement of labor laws" constitutes a cognizable public interest under FOIA. *Local 598,* 841 F.2d at 1462. Since *Local 598*'s public interest analysis was not focused on whether the disclosed documents would reveal what the government is up to, its reasoning was implicitly overruled by *Reporters Committee* and explicitly rejected by *United States Dep't of Defense,* —— U.S. at ——, 114 S.Ct. at 1014.

Bacon. They argue that this would fulfill the "basic purpose" of FOIA: to "'open agency action to the light of public scrutiny.'" *Rose*, 425 U.S. at 372, 96 S.Ct. at 1604.

The circuits disagree about the appropriateness of such "derivative use" arguments in analyses of the FOIA privacy exemptions. *Compare Department of Veterans Affairs*, 958 F.2d at 512 (rejecting derivative-use argument is always appropriate) *and Hopkins*, 929 F.2d at 88 ("[D]isclosure of information affecting privacy interests is permissible only if the information reveals something *directly* about the character of a government agency or official.") (emphasis in original) *with Painting and Drywall*, 936 F.2d at 1303 (derivative use is a public interest cognizable under FOIA); *see also United States Dep't of Navy v. FLRA*, 975 F.2d 348, 355 n. 3 (7th Cir.1992) (agreeing with Second Circuit that "virtually any piece of information about a government employee could possibly provide some assistance to an investigative reporter").

The Supreme Court has avoided the issue. *See United States Dep't of State v. Ray*, —— U.S. ——, —— – ——, 112 S.Ct. 541, 549–50, 116 L.Ed.2d 526 (1991). If "derivative" public benefits are merely those which require some tabulation of data released under FOIA, or perhaps some further research on the part of the requester, we see no reason why the extra effort required of the requester should, in every case, render a proffered public benefit more or less strong. The problem in the cases before us, however, is that the additional step requires direct contact with the employees whose payroll records are being sought. Any additional public benefit the requesters might realize through those contacts is inextricably intertwined with the invasions of privacy that those contacts will work.

On balance, we hold that release of the information sought by the requesters would constitute a "clearly unwarranted invasion of personal privacy" and the payroll records are therefore exempt from disclosure under FOIA. The requesters here have less intrusive means of procuring the information they

seek than having the government disgorge private information from its files. They may pass out fliers at the beginning or end of the workday to workers on federal contracts, providing a form for the employees to self-report the information the requesters now seek to procure through FOIA. They may post signs or advertisements soliciting information from workers about possible violations of the Davis–Bacon Act. Through any of these means, the requesters may procure the information they desire. Whether they seek to self-enforce the Davis–Bacon Act or to shed light on the government's enforcement of it, the government need not violate the privacy of these workers by disclosing unredacted payroll records.

We find the Sixth Circuit's discussion of privacy implications in an analogous situation instructive. In *Heights Community Congress v. Veterans Admin.*, 732 F.2d 526 (6th Cir.), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984), that court held that a community group was not entitled to information about VA-insured loans from which the name and social security number of loan recipients would be redacted but property address and amount of loan would not be.[6] The court held that, on balance, Exemption 6 justified withholding of the information because its release

> would subject a veteran, who is not himself suspected of any wrongdoing, to involuntary personal involvement in [plaintiff]'s investigation of [racial] steering. Even if [plaintiff] did not itself attempt to link addresses to specific veterans, any realtor or lender accused of steering by evidence compiled from individual VA loan reports could, if inclined to do so, certainly seek to examine the reports and counter the inference of steering by interrogating the individual buyers of the identified property. Holding a person's privacy hostage in this fashion is contrary … to the basic right in this nation simply to be left alone. Certainly nothing prevents [plaintiff] from publicly advertising its investigation and requesting any VA loan recipient who desires to cooperate with [plaintiff] to come

---

**6.** In an analysis cast into doubt by *Reporters Committee*, the court held that the purpose was

proper under FOIA. *Heights Community Congress*, 732 F.2d at 530.

forward if he so elects, or pursuing other less controversial avenues to obtain the information.

*Id.* at 530.

Finally, we note that the requesters already have a substantial amount of the information they seek. In each case, the government has agreed to provide the certified payroll records with names, addresses, and social security numbers redacted. Thus, the requesters can compare job classifications to pay rates to determine if employees are being paid the prevailing wage. We recognize that the redacted records would not permit the requesters to determine whether the government was discovering violations in which contractors misclassify workers in order to pay a less-than-prevailing wage or where contractors properly classify and compensate the worker on paper but require him or her to pay a kickback to the contractor. We simply believe that, as a matter of law, the employees' privacy interests are not outweighed by the marginal additional usefulness that the names and addresses would serve in uncovering "what the government is up to."[7] Disclosure would therefore be a "clearly unwarranted invasion of personal privacy" and the government was justified in withholding the names and addresses pursuant to Exemption 6 of FOIA.

## IV

Because we hold that Exemption 6 justifies the government's action in providing redacted copies of certified payroll records requested by the labor organizations, we need not reach the Exemption 7(C) issue nor Rebound's appeal concerning attorneys' fees and additional remedies. The judgments of the district courts below are REVERSED.

**WILLIAM A. NORRIS**, Circuit Judge, concurring:

I believe the critical question at issue is whether FOIA requires the government to release the payroll records with the individual employees' home *addresses* included. Plaintiffs want the addresses to enable them to contact the workers directly to check the accuracy of the records submitted to the government, and to determine whether the agencies are doing a satisfactory job in discovering reporting violations such as job misclassifications and secret kickback arrangements.

I come down on the side of nondisclosure because I believe that the release of home addresses would constitute a "clearly unwarranted" privacy invasion, outweighing even the public's substantial interest in release of these records.[1] The invasion of privacy that results from disclosure of one's home address is far more substantial than, say, the disclosure of one's phone number. In contrast to phone numbers, home addresses are not routinely available. Many people choose to list their addresses in the phone book, but many do not. The reason is simple: publishing your phone number may invite annoying phone calls, but publishing your address can lead to far more intrusive breaches of priva-

---

7. The requesters cite *Dobronski v. FCC*, 17 F.3d 275 (9th Cir.1994), as support for the importance of the information they seek. The interests weighed in that case, however, are dramatically different from those we weigh here today. In *Dobronski*, the requester had received a "tip" that a particular assistant bureau chief for the FCC had improperly used sick leave. 17 F.3d at 277. The requester sought records that merely contained the dates on which the assistant bureau chief had taken sick leave. *Id.* at 279. Noting that the records did not disclose any information of a personal nature, such as the particular illness or condition necessitating the absence, the court in that instance found the balance weighed in favor of disclosure. *Id.* Like our decision in *Dobronski*, we believe a limited amount of information is appropriate for disclosure. For that reason, our decision is based in part on the government's willingness to provide information that will allow the requesters to compare job classifications to pay rates.

1. I do not say, however, that the disclosure of home addresses would never be warranted. If the public interest is sufficiently strong, the balance may favor disclosure. But before a court authorizes the release of home addresses, it should first examine whether the proposed public benefit could be served just as well by disclosure of other identifying information. For instance, plaintiffs here may be able to accomplish their public monitoring purpose just as well (or very nearly so) by relying on the workers' telephone numbers, rather than their home addresses.

cy, and even physical danger.[2]

Although I agree with the result reached by the majority, I have two concerns with the majority's analysis. First, I am troubled by the manner in which the majority evaluates the privacy interests at stake in this case. While I do not dispute that the workers have a significant privacy interest in their home addresses, I question the way the majority assesses the consequences of disclosure in reaching its conclusion that disclosure would invade "substantial" privacy interests,. and thereby produce a "clearly unwarranted invasion of personal privacy." Majority Opinion at 1484, 1485.

The majority's evaluation of the privacy invasion rests, in large part, on the generic statement by the government that disclosure would produce a "barrage of mailings" that would seriously intrude upon the privacy of the construction workers. *See* Majority Opinion at 1483–84. The majority buys into this assumption even though the government has failed to produce any evidence to suggest that these construction workers constitute a targeted group who would be exploited by mass marketers. In my view, the government may not rely on mere conjecture in describing the extent of the privacy invasion that would result. It must show that there is a "substantial probability" that the information would be used in the intrusive manner that is being suggested. *National Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 878 (D.C.Cir.1989); *see also United States Dep't of State v. Ray,* — U.S. —, — n. 12, 112 S.Ct. 541, 548 n. 12, 116 L.Ed.2d 526 (1991) (citing *Horner* and rejecting a per se rule against disclosing lists of names and other identifying information). A vague assertion that someone *might* be interested in reaching persons identified on government records is not enough; there must

be some sort of evidentiary showing to suggest the sorts of intrusive consequences that would likely flow from disclosure. *See Horner,* 879 F.2d at 876, 878; *Birch v. United States Postal Serv.,* 803 F.2d 1206, 1209 (D.C.Cir.1986) ("The agency bears the burden of setting forth 'a relatively detailed justification' for assertion of an exemption...").

My second concern regards the majority's valuation of the public interest at stake. The Supreme Court recently reaffirmed the fundamental principle that " '*disclosure,* not secrecy, is the dominant objective of [FOIA].' " *United States Dep't of Defense v. FLRA,* — U.S. —, —, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994) (quoting *Department of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976) (emphasis added)). In place of the strong presumption in favor of disclosure, the majority discounts the public interest by adopting a per se rule that such an interest is minimal if it depends on "derivative use" that requires any contact with individuals. While I agree with the majority that there should be no per se rule barring courts from considering the "derivative uses" of information as part of the public benefits to disclosure,[3] *see* Majority Opinion at 1485, I disagree with the majority's apparent suggestion courts should ignore the public benefits of disclosure if such benefits depend on a "derivative use" that involves direct contact with individuals. *Id.* at 1485. As the majority states:

> The problem in the cases before us ... is that the additional step requires direct contact with the employees whose payroll records are being sought. Any additional public benefit the requesters might realize through those contacts is *inextricably intertwined* with the invasions of privacy that those contacts will work.

2. For the same reason, telephone directory assistance normally will not provide callers with addresses for the telephone numbers the callers have requested.

3. In the past three years, the Supreme Court has twice declined to adopt such a per se rule, *see United States Dep't of Defense,* — U.S. —, 114 S.Ct. 1006; *Ray,* — U.S. at —, 112 S.Ct. at 549, and I see no justification for adopting it as the law of our circuit. It is often impossible to find out what one document means unless it is read in a larger context, supplemented with in-

formation that comes from other sources. *See Painting and Drywall Work Preservation Fund v. HUD,* 936 F.2d 1300, 1303 (D.C.Cir.1991) ("We have recognized that a relevant public interest could exist where the names of current workers might provide leads for an investigative reporter seeking to ferret out what government is up to.") (quotation marks omitted). Confining the public interest inquiry to the four corners of the document requested would be unnecessarily formalistic and inconsistent with FOIA's general policy of full agency disclosure.

*Id.* (emphasis added). The fact that the public benefits of disclosure may be "intertwined" with the privacy interests should in no way diminish the importance of the public interest asserted. The public interest inquiry and the privacy inquiry are two separate strands of the analysis: the strength of the public interest has no bearing on the strength of the privacy interest, nor does the privacy interest affect the weight of the public interest. To be sure, the two factors ultimately get balanced against one another, but they must be evaluated independently. To mix the two factors together *before* the balancing phase unnecessarily confuses the analysis.

In short, the majority's adoption of a per se rule against considering derivative uses in weighing the public interest conflicts with FOIA's "strong presumption in favor of disclosure." *Ray,* —— U.S. at ——, 112 S.Ct. at 547. By confining the public interest to the information contained in the four corners of agency records, the majority resets the FOIA scales heavily against disclosure.[4]

---

4. This is particularly troubling in light of the majority's inclusion on the privacy side of the scales consideration of any derivative use to which the disclosed information might be put. *See* Majority Opinion at 1483 (disclosure might lead to a barrage of mailings by merchandisers). As Justice Scalia noted in his separate opinion in *Ray,* "derivative use on the public-benefits side, and derivative use on the personal-privacy side must surely go together (there is no plausible reason to allow it for one and bar it for the other)." —— U.S. at ——, 112 S.Ct. at 551 (Scalia, J., concurring in the judgment and concurring in part).