**Ralph SCHOENMAN, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**Civil Action No. 04–2202 (CKK).**

United States District Court, District of Columbia.

Sept. 15, 2008.

Kathleene A. Molen, U.S. Department of Justice, James H. Lesar, Washington, DC, for Plaintiff.

Kathleene A. Molen, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION

COLLEEN KOLLAR–KOTELLY, District Judge.

This Memorandum Opinion addresses the discrete issue held in abeyance by the Court's September 1, 2008 Memorandum Opinion: the Department of State's ("State Department") withholding of information from two documents in response to Plaintiff's request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, ("Privacy Act" or "PA"), 5 U.S.C. § 552a. Plaintiff, Ralph Schoenman, a political activist and author, filed FOIA/PA requests seeking access to an array of records pertaining to himself, Lord Bertrand Russell, and six organizations, with a total of ten different named agencies and a number of unnamed agencies to which the named agencies might refer documents for a determination as to releasability (identified as "John Doe Agencies 1–10" in Plaintiff's Complaint).

In its September 1, 2008 Memorandum Opinion and Order, the Court granted-in-part the State Department's Motion for Summary Judgment, and denied-in-part Plaintiff's Cross–Motion for Partial Summary Judgment, insofar as each related to the adequacy of the State Department's search, the State Department's segregation of non-exempt information, and the State Department's withholding of information from Documents P323 and P334. The Court found, however, that it could not resolve the parties' cross-motions as to Documents P143 and P319 because the State Department had withheld the names of an FBI legal attaché and two FBI agents from those documents pursuant to FOIA Exemption 6 and 7(C) but did not indicate whether it had made any efforts to determine those individuals' life status before purporting to balance their privacy interests against any public interest in disclosure. The Court therefore held in abeyance the parties' cross-motions for summary judgment with respect to Documents P143 and P319 and required the State Department to indicate to the Court whether the FBI legal attaché and agents are alive or dead, so that the Court could consider the State Department's balancing under FOIA Exemptions 6 and 7(C).

The State Department has since provided that information via an additional declaration by Margaret P. Grafeld, Information and Privacy Coordinator of the Office of Information Programs and Services ("IPS"), State Department (hereinafter "Add'l Grafeld Decl."). Based upon Ms. Grafeld's Additional Declaration, and in particularly light of the fact that Plaintiff has not identified a public interest in the disclosure of the names at issue that outweighs the privacy interests of the individuals involved, the Court concludes that the State Department has properly withheld the names from Documents P143 and P319. The Court shall therefore GRANT the State Department's [52] Motion for Summary Judgment and DENY Plaintiff's

■ Cross–Motion for Summary Judgment with respect to those documents.

## DISCUSSION

The factual background of this case is extensively discussed in this Court's September 1, 2008 Memorandum Opinion regarding the State Department's Motion for Summary Judgment and Plaintiff's Cross–Motion for Summary Judgment. *See Schoenman v. DOJ*, Civ. A. No. 04–2202, 2008 WL 4053457, 573 F.Supp.2d 119 (D.D.C.2008) (hereinafter "State MSJ Op."). The Court does not repeat that discussion herein, but assumes familiarity with it and expressly incorporates it herein. Having previously concluded that the State Department conducted an adequate search for documents in response to Plaintiff's FOIA/PA request and justified the majority of its withholdings in response to that request, *see generally id.*, the Court only addresses the State Department's withholding of the names of an FBI legal attaché and the names of two FBI agents from Documents P143 and P319 pursuant to FOIA Exemptions 6 and 7(C).

### A. Relevant Legal Standard

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). Under the summary judgment standard, the State Department, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings ... together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff, in response to Defendant's motion, must "go

beyond the pleadings and ... designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (internal quotation marks omitted).

■ In reviewing a motion for summary judgment under the FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). All underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, summary judgment is only appropriate where an agency proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C.1996) (citing *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C.Cir. 1983)). Summary judgment may be granted on the basis of accompanying agency affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search. *See SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1200 (D.C.Cir.1991). Courts must "accord substantial weight" to an agency's affidavits regarding FOIA exemptions. 5 U.S.C. § 552(a)(4)(B) (2004); *see also Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir.1994) ("Affidavits submitted by an agency are 'accorded a presumption of good faith.' ") (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200). Significantly, in opposing a motion for summary judgment or cross-moving for summary judgment, a FOIA plaintiff must offer more than conclusory statements. *See Broaddrick v. Exec. Office of President*, 139 F.Supp.2d

55, 65 (D.D.C.2001) (citing *Laningham v. Navy,* 813 F.2d 1236, 1241 (D.C.Cir.1987)).

### B. FOIA Exemptions 6 and 7(C)

 As the Court explained in its September 1, 2008 Memorandum Opinion, FOIA Exemption 6 permits an agency to withhold information contained within "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see NARA v. Favish,* 541 U.S. 157, 171, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004); *DOJ v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773–74, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The term "similar files" is broadly interpreted, such that Exemption 6 protects from disclosure all information that "applies to a particular individual" in the absence of a public interest in disclosure. *State Dep't v. Washington Post Co.,* 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) ("In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, the exemption was intended to cover detailed Government records on an individual which can be identified as applying to that individual.") (internal quotation and citation omitted). Accordingly, it is not the nature of the files in which the information is contained, but rather the balance of public and private interests that determines the Exemption's scope. *Washington Post,* 456 U.S. at 599–600, 102 S.Ct. 1957.

Pursuant to FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), an agency may withhold information within documents "compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). A similar privacy interest versus public benefit calculation applies with respect to this Exemption; however, the threshold require-

ment for FOIA Exemption 7(C) is that the document at issue must have been "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The State Department invoked both FOIA Exemptions 6 and 7(C) in withholding the names of FBI personnel from Documents P143 and P319. The Court already concluded in its September 1, 2008 Memorandum Opinion that the names withheld from those documents met the threshold test for each Exception because they "appl[y] to an individual" and are contained in documents compiled for law enforcement purposes. *See* State MSJ Op. at 41–45. The Court does not revisit those conclusions herein.

### C. Applying FOIA Exemptions 6 and 7(C) to Documents P143 and P319

 As noted in the Court's September 1, 2008 Memorandum Opinion, while FOIA Exemptions 6 and 7(C) are similar in requiring the balancing of privacy interests against the public interest in disclosure, they are not coterminous. *Beck v. DOJ,* 997 F.2d 1489, 1491 (D.C.Cir.1993). For purposes of FOIA Exemption 7(C), the D.C. Circuit applies a "categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.' " *Schrecker v. DOJ,* 349 F.3d 657, 661 (D.C.Cir.2003) (quoting *SafeCard,* 926 F.2d at 1206). This categorical rule does not necessarily apply with respect to Exemption 6, however, because Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6. *Reporters Comm.* at 756, 109 S.Ct. 1468. Specifically, "Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' " and that the disclosures "would constitute" an invasion of privacy, while Exemption 7(C) refers only to an "unwarranted" invasion

and covers any disclosure that "could reasonably be expected to constitute" an invasion of privacy. *Id.*

 Exemption 6's stronger language "tilt[s] the balance (of disclosure interests against privacy interests) in favor of disclosure," and creates a "heavy burden" for an agency invoking Exemption 6. *Morley v. Cent. Intelligence Agency,* 508 F.3d 1108, 1128 (D.C.Cir.2007). Thus, in considering whether FOIA Exemption 6 applies, the Court must "first determine whether disclosure of the [information at issue] 'would compromise a substantial, as opposed to *de minimis,* privacy interest.'" *Multi Ag Media LLC v. Dep't of Agriculture,* 515 F.3d 1224, 1230 (D.C.Cir.2008) (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 874 (D.C.Cir.1989)). For this purpose, however, "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest." *Id.* at 1230–31. In addition, for purposes of balancing, it is significant that "[t]he public's interest in disclosure of personnel files derives from the purpose of the [FOIA]—the preservation of 'the citizens' right to be informed about what their government is up to.'" *Beck,* 997 F.2d at 1492–93 (quoting *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468 (internal quotation marks omitted)). While FOIA's purpose "is furthered by disclosure of official information that 'sheds light on an agency's performance of its statutory duties,'" [i]nformation that "reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Id.* at 1493 (quoting *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468).

As the Court noted in its September 1, 2008 Memorandum Opinion, as a general principle, "persons involved in FBI investigations—even if they are not the subject of the investigation—'have a substantial interest in seeing that their participation remains secret.'" *Fitzgibbon v. CIA,* 911 F.2d 755, 767 (D.C.Cir.1990) (quoting *King v. DOJ,* 830 F.2d 210, 233 (D.C.Cir.1987)). However, the D.C. Circuit also recognizes "that the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased," and has explained that "[t]he fact of death, therefore, while not requiring the release of information, is a relevant factor to be taken into account in the balancing decision whether to release information." *Schrecker,* 349 F.3d at 661 (quotation omitted). The State Department's initial declarations in support of its Motion for Summary Judgment failed to provide any information as to whether the FBI personnel whose names were withheld from Documents P143 and P319 were alive or dead, and did not explain any efforts the State Department had undertaken to ascertain that information. As this failure precluded the Court from evaluating the State Department's balancing of privacy interests versus public interests, the Court required the State Department to provide information that information to the Court.

 The State Department has now done so, in the form of Ms. Grafeld's Additional Declaration, submitted September 9, 2008. *See* State Dept. Notice, Attach (Docket No. [85–2] ). Ms. Grafeld's Additional Declaration indicates that the FBI "took several steps to ascertain the current life/death status of the individuals whose names were withheld." *Id.* ¶ 5. Ms. Grafeld's Additional Declaration is not clear as to when the FBI purportedly took those steps. *Id.* For its part, the State Department appears to have invoked FOIA Exemptions 6 and 7(C) on behalf of the FBI without first inquiring as to the life status of the individuals whose names were withheld from Documents P143 and P319. *Id.* ¶ 4. The State Department does

not appear to have made such inquiry of the FBI until ordered to do so by this Court. *Id.* Under D.C. Circuit precedent, an agency invoking FOIA Exemptions 6 and 7(C) must make "a reasonable effort to ascertain life status," *Schrecker*, 349 F.3d at 662, and the agency's efforts in that respect speak to the reasonableness of its response to a FOIA request, *see Davis v. DOJ*, 460 F.3d 92, 95 (D.C.Cir.2006) (quoting *Schrecker*, 349 F.3d at 662). The Court therefore warns the State Department that, in the future, it is required to make efforts to ascertain an individual's life status before invoking a privacy interest in connection with FOIA Exemptions 6 and 7(C). Further, the State Department should do so in the first instance rather than waiting to be prompted to do so by Court Order.

Nevertheless, upon reviewing the explanation that Ms. Grafeld's Additional Declaration provides of the FBI's efforts to ascertain life status, the Court concludes that they are reasonable efforts. The Court further finds, upon balancing the privacy and public interests at stake, that the State Department has properly invoked FOIA Exemptions 6 and 7(C).

### 1. Document P143

█ Ms. Grafeld's Additional Declaration explains that "[n]ormally, the FBI uses either the birth date or Social Security number to determine whether an individual is living or deceased, to the extent either or both of these pieces of information is discernable from the file." Add'l Grafeld Decl. ¶ 5. The FBI uses the birth date to apply the so-called "100–year rule," i.e., a rule that "if the individual was born more than 100 years ago, the FBI pre-

sumes that he or she is dead and the name is released," and may use a Social Security number to consult the list published by the Social Security Administration of deceased persons. *Id.* The D.C. Circuit has concluded that the 100–year rule is, as a general matter, a reasonable prophylactic presumption. *See Schrecker*, 349 F.3d at 664–65.

With respect to the FBI legal attaché whose name was withheld from Document P143, Ms. Grafeld explains that "only 'Mr.' and the last name" of the attaché appear in the document, and that "[c]omplicating matters was the fact that the last name is a common one." Add'l Grafeld Decl. ¶ 5. Accordingly, the "FBI contacted its Office of International Operations (OIO), which is responsible for all legal attachés, and OIO advised that it was unable to provide any additional information." *Id.* Ms. Grafeld further states that "[t]he FBI also researched its personnel system and institutional knowledge gained from prior FOIA requests or internal records" in an attempt to determine the FBI legal attaché's full identity, and that "while there were several potential matches, none could be determined to be a match with enough certainty to override privacy concerns." *Id.*[1]

According to Ms. Grafeld, then, the FBI could not actually ascertain whether the legal attaché mentioned in Document P143 is alive or dead because it could not determine his first name with any certainty and thereby identify the individual. This case is therefore unlike *Davis*, in which the D.C. Circuit rejected the FBI's claim that it had made reasonable efforts to ascertain whether *known* individuals were alive or dead, *see generally* 460 F.3d 92, because

---

**1.** Significantly, Ms. Grafeld's Declaration does not state how many potential matches the FBI located or indicate, of those potential matches, how many the FBI knows to be alive, deceased, or covered under the 100–

year rule. Providing this information would certainly have allowed the Court a more concrete basis to evaluate the reasonableness of the State Department's withholding.

here the FBI claims to lack the information required to even commence such efforts. The Court notes that the FBI's apparent inability to positively identify the legal attaché at issue based on his last name may well cast doubt on its claim that the attaché has a significant privacy interest in the withholding of his name. To wit, if the FBI cannot figure out who the legal attache was by resort to its internal resources, it is unlikely Plaintiff will be able to do so.

██ The Court nevertheless concludes that the State Department may withhold the name of the FBI legal attaché under FOIA Exemption 7(C). Significantly, whether the legal attaché is alive or deceased is not dispositive of the privacy interest versus public interest balancing required by FOIA Exemption 7(C). *See Schrecker*, 349 F.3d at 661 ("The fact of death, therefore, while not requiring the release of identifying information, is a relevant factor to be taken into account in the balancing decision whether to release information.") (citation omitted). As noted above, the D.C. Circuit has concluded that "persons involved in FBI investigations—even if they are not the subject of the investigation—'have a substantial interest in seeing that their participation remains secret.'" *Fitzgibbon*, 911 F.2d at 767. Ms. Grafeld echoed this sentiment in her Supplemental Declaration in support of the State Department's Motion for Summary Judgment when she averred that "[d]ue to the involvement of the[ ] FBI employees in the underlying investigation into plaintiff's passport eligibility and revocation, the release of their identity could subject them to hostility and unwarranted harassment." Grafeld Suppl. Decl. ¶ 17. Of particular relevance, Plaintiff's Cross–Motion explains his interest in learning the name of the FBI legal attaché by stating that "if the [legal attaché] is still alive, [Plaintiff] would like to talk with him and ascertain what knowledge, if any, he had about [gov-

ernmental] operations and how [the legal attaché] obtained knowledge about [Plaintiff's] political views." Pl.'s Cross–MSJ at 16–17. This statement confirms the Court's conclusion that, to the extent the legal attaché's identity could determined if his last name were released, the attaché would have a more than *de minimis* privacy interest in his name being withheld. The legal attaché's last name would apparently only be of interest to Plaintiff insofar as it revealed the attaché's identity; however, if it revealed the attaché's identity, the attaché would have an interest in "seeing that [his] participation [in the investigation into Plaintiff's passport eligibility and revocation] remains secret." *Fitzgibbon*, 911 F.2d at 767.

As for the alleged public interest, Plaintiff's Cross–Motion categorically asserts that "disclosure informs the public [of] who was doing what for the American government," Pl.'s Cross–MSJ at 16, and continues to explain that disclosure would reveal "who had particular knowledge of [Plaintiff's] political views. For many years [Plaintiff] was subjected to extensive surveillance by a variety of government agencies. He believes that those who conducted this surveillance were aware of governmental operations about him," *id.* at 16–17. While Plaintiff thus attempts to dress up his personal interest in discovering which government agents were involved in his passport-related investigation, the information he seeks would, in fact, "reveal[ ] little or nothing about an agency's own conduct.'" *Beck*, 997 F.2d at 1493 (quoting *Reporters Comm.*, 489 U.S. at 773, 109 S.Ct. 1468). As such, it "does not further the statutory purpose [and] the public has no cognizable interest in the release of such information." *Id.*

Plaintiff's Cross–Motion also asserts that there is a public interest in the disclosure of the FBI legal attaché's name be-

cause Document 2 states that the Selective Service classified Plaintiff in 1961 based "upon a medical diagnosis of: 'schizoid personality, chronic, moderate,' with a record of having had psychoanalysis for two years and being in need of further treatment." Pl.'s Cross–MSJ at 17. According to Plaintiff, "[i]t is of some importance to pin down the source of this 'information,' as this allegation is reminiscent of the means employed in the Soviet Union to control and discredit political dissidents, and the public needs to learn as much about its use by the American Government as is possible." *Id.* However, as the State Department correctly notes, "[i]t is unclear how releasing the name of the FBI legal attaché would shed light on who provided information to the Selective Service System and plaintiff's classification by the Selective Service System." State Dep't Reply/Opp'n at 15. Because the information Plaintiff seeks is therefore unlikely to "shed light on an agency's performance of its statutory duties," *Reporters Comm.*, 489 U.S. at 773, 109 S.Ct. 1468, the Court concludes that there is no public interest in its disclosure.

In short, the balancing of the privacy interest versus public interest with respect to the name withheld from Document P143 appears to be something of a zero-sum game. On the one side, to the extent that the FBI cannot determine the legal attaché's identity based on the information withheld, the attaché may have a diminished interest in its withholding. On the other side, Plaintiff has not demonstrated any public interest—of the type cognizable under the FOIA—in the disclosure of the withheld name. As such, the Court is guided by the fact that the D.C. Circuit applies a "categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in

illegal activity.' " *Schrecker,* 349 F.3d at 661. As Plaintiff does not allege that the disclosure of the FBI legal attaché's name "is necessary to confirm or refute compelling evidence that the agency is engaged in illegal activity"—and the Court sees no indication that is the case—the Court applies the categorical rule permitting withholding under FOIA Exemption 7(C). Further, having concluded that FOIA Exemption 7(C) covers the withheld FBI legal attaché's name, the Court need not consider whether that name might also be withheld pursuant to FOIA Exemption 6.

### 2. *Document P319*

██ Ms. Grafeld's Additional Declaration also describes the FBI's efforts to ascertain the life status of the two FBI agents whose names are withheld from Document P319. As to the first, Document P319 "provides a last name—also a common name—and a first and middle initial", e.g., "A.B. Smith." Add'l Grafeld Decl. ¶ 6. Ms. Grafeld explains that, through use of personnel records, "the FBI identified two former employees with the same initials and last name, one of whom was born in 1926 and the other was born in 1936." *Id.* However, because the two individuals have the same birthday (other than year), Ms. Grafeld suggests there may be "an error in one of the entries and that there is in fact only one individual with that name." *Id.* According to Ms. Grafeld, there are no Social Security numbers or other identifying data identified with the individual, and "[a]pplying the '100–year rule' to both entries, the FBI presumes that this individual . . . is still alive." *Id.*

Ms. Grafeld's Additional Declaration establishes that the FBI reasonably concluded that the first FBI agent whose name was withheld from Document P319 had a greater than *de minimis* privacy interest in that withholding. As noted above, the

D.C. Circuit has found the 100–year rule to be a reasonable prophylactic presumption, *see Schrecker,* 349 F.3d at 665, and "persons involved in FBI investigations—even if they are not the subject of the investigation—'have a substantial interest in seeing that their participation remains secret.'" *Fitzgibbon,* 911 F.2d at 767. Further, Plaintiff's asserted interest in the FBI agent's name is that it would "show[ ] who in the FBI was doing what," and "would afford [Plaintiff] the opportunity, if they are still living and locatable, to speak with the [FBI agents] and determine what kind of investigation or operation they were working on and why they wanted to have access to his passport file." Pl.'s Cross–MSJ at 18. To the extent that Plaintiff suggests that he would use the withheld information to attempt to locate the FBI agent, his own asserted rationale confirms Ms. Grafeld's explanation that "release of the[ ] [FBI agents'] identity could subject them to hostility and unwarranted harassment." Grafeld Suppl. Decl. ¶ 17. Further, Plaintiff asserts that "because [he] was a prominent political dissident, there is a public interest in the disclosure of" the FBI agent's name. Pl.'s Cross–MSJ at 18. However, the FBI agent's name itself "reveals little or nothing about an agency's own conduct' [and therefore does] not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Beck,* 997 F.2d at 1493 (quoting *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468). Accordingly, the Court finds that the State Department properly withheld the first FBI agent's name from Document P319 pursuant to FOIA Exemptions 6 and 7(C).

 As to the second FBI agent whose name was withheld from Document P319, Ms. Grafeld's Additional Declaration states that, again "there appears only a last name and two initials with no additional data." Add'l Grafeld Decl. ¶ 7. However, according to Ms. Grafeld, "[t]his last name is not as common as the other two individuals' names at issue in these two documents." *Id.* Accordingly, the FBI used its "institutional knowledge" "to identify with sufficient certainty that a former FBI official with the same two initials and last name is deceased." *Id.* The "FBI has therefore informed the [State] Department that this name can be released at the present time," and the State Department "will promptly provide Plaintiff a new copy of document P319 with [the second FBI agent's name] now released." *Id.* ¶¶ 7–8.

The Court agrees with the FBI's and the State Department's assessment that the second FBI agent's name should be released in Document P319 as the second FBI agent is now deceased. *See Schrecker,* 349 F.3d at 661 ("the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased."). The Court notes that the State Department's release of the previously withheld name of the second FBI agent moots any issue with respect to that withholding. Notwithstanding this conclusion, however, the Court notes that based on Ms. Grafeld's Additional Declaration, it is unclear whether the FBI attempted to ascertain the second FBI agent's life status before invoking FOIA Exemptions 6 and 7(C) to withhold his name and it further appears that the State Department made no such efforts. *See generally* Grafeld Add'l Decl. The Court therefore cautions the FBI and the State Department that, under D.C. Circuit precedent, "without confirmation that the Government took certain basic steps to ascertain whether an individual was dead or alive, [a court is] unable to say whether the Government reasonably balanced the interests in personal privacy against the public interest in the release of the information at issue." *Davis,* 460 F.3d at 98 (quoting *Schrecker v. DOJ,* 254 F.3d 162, 167 (D.C.Cir.2001)). In light of this precedent, agencies must

take pains to ascertain life status in the first instance, i.e., in initially balancing the privacy and public interests at issue.

## IV: CONCLUSION

For the foregoing reasons, the Court shall GRANT the State Department's [52] Motion for Summary Judgment and DENY Plaintiff's [56] Cross–Motion for Summary Judgment with respect to the issue held in abeyance in the Court's September 1, 2008 Memorandum Opinion, i.e., the State Department's withholding of information from Documents P143 and P319. An appropriate Order accompanies this Memorandum Opinion.